UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-93-SEB-MJD-07 |
| v. | ORDER ON MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ALPHONSE TURNER | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00093-SEB-MJD |
| | ) | |
| ALPHONSE TURNER, | ) -07 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Alphonse Turner has filed motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkts. 331, 346. Mr. Turner seeks immediate release from incarceration. *Id.* at 1. For the reasons explained below, his motions are **DENIED**.

**I.     Background**

In 2018, Mr. Turner pled guilty to three counts of interference with commerce by threats or violence, in violation of 18 U.S.C. § 1915(a). Dkts. 155, 157. In pleading guilty, Mr. Turner stipulated that he acted as the driver for two pharmacy robberies in which the robbers passed written notes to the pharmacists threatening them with physical injury if they did not provide specific narcotic pain medications. Dkt. 131 at 7–8. He also stipulated that he personally robbed one pharmacy, during which robbery he passed a written note to the pharmacist threatening the pharmacist with physical injury if the pharmacist did not provide him with specified narcotic pain medications. *Id.* at 8. Finally, he stipulated that, in a post-Miranda statement, he admitted to participating in a fourth pharmacy robbery as the driver. *Id.* at 8–9. The Court sentenced him to

2

concurrent terms of 78 months of imprisonment for each count, to be followed by concurrent terms of 3 years of supervised release. Dkts. 155, 157.

Mr. Turner has been in custody since June 2017. The Bureau of Prisons ("BOP") gives February 20, 2023, as Mr. Turner's projected release date with good-time credit. That is, with good-time credit, Mr. Turner has served about two-thirds of his sentence.

Mr. Turner is 28 years old. He is currently incarcerated at FCI Allenwood Medium. As of April 9, 2021, the BOP reports that one inmate and one staff member at FCI Allenwood Medium have active cases of COVID-19; it also reports that 532 inmates at FCI Allenwood Medium have recovered from COVID-19. https://www.bop.gov/coronavirus/ (last visited Apr. 9, 2021). The BOP also reports that 388 staff members and 980 inmates at FCC Allenwood (of which FCI Allenwood Medium is a part) have been fully inoculated against COVID-19. *Id.*

In September 2020, Mr. Turner filed a pro se motion for compassionate release. Dkt. 331. He also filed supporting exhibits. Dkt. 333. The Court appointed counsel. Dkt. 332. Appointed counsel filed an amended motion for compassionate release and supporting memorandum, dkt. 346, the United States responded, dkt. 349, and Mr. Turner filed his reply, dkt. 351. Thus, the motions are now ripe for decision.

**II.     Discussion**

Mr. Turner seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 346. Specifically, he contends that his underlying medical conditions (including asthma, hypertension, and obesity) make him more susceptible to severe complications from COVID-19 and that he cannot adequately protect himself from the virus while in BOP custody because the BOP has failed to curtail the spread of the virus. *Id.* Mr. Turner argues that the sentencing factors under 18 U.S.C. § 3553(a) weigh in his favor because he has

3

served more than three-and-a-half years, he has a relatively minor criminal record, and the lockdown conditions he has endured during the pandemic have increased the harshness of his sentence. *Id.* He argues that he would not be a danger to the community if released, noting that he has family support, plans to obtain his CDL and work for his father, has completed many classes during his incarceration, and has achieved sobriety. *Id.* In response, the United States concedes that Mr. Turner has exhausted his administrative remedies but argues that Mr. Turner has not established extraordinary and compelling reasons for release, that he would be a danger to the community if released, and that the sentencing factors in § 3553(a) do not favor release. Dkt. 349.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his

5

sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . ."). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling

reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Turner does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case.[1]

Mr. Turner claims that extraordinary and compelling reasons warrant a sentence reduction in this case because he has various conditions (including obesity, hypertension, and asthma) that increase his risk of experiencing severe COVID-19 symptoms. Dkt. 61. The CDC (Centers for Disease Control) has recognized that obesity and moderate-to-severe asthma can make a person more likely to get severely ill from COVID-19 and that hypertension may possibly increase the risk for suffering severe COVID-19 symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 9, 2021). While it appears that Mr. Turner may be managing these conditions while incarcerated, the Court will assume that Mr. Turner's risk of developing severe symptoms if he contracts COVID-19 creates an extraordinary and compelling reason that could potentially warrant a sentence reduction.

This assumption does not end the analysis, however, because the Court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Turner's motions for compassionate release. The factors are: (1) the nature and circumstances of the offense and the

---

[1] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180–81, the Court has considered the rationale provided by Mr. Turner's warden in denying Mr. Turner's administrative request for relief. Dkt. 331-1 at 2. Mr. Turner's warden appears not to have considered the possibility that Mr. Turner could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement and instead focused only on Subsection (A). *Id.* Thus, the warden's decision provides little guidance to the Court's analysis.

history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Turner's motion.

Here, Mr. Turner suffers from several conditions that increase or might increase his risk of experiencing severe symptoms if he contracts COVID-19. Moreover, the nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves from the virus. The Court also recognizes that FCI Allenwood Medium experienced a significant outbreak of COVID-19 and that one inmate and one staff member still have active cases of COVID-19.

That said, the BOP's efforts to control the virus among the inmate population appear to be having some success, as the facility currently has only one inmate with an active case of COVID-19. In addition, the BOP has also actively begun vaccinating inmates against COVID-19, and a significant number of staff and inmates at FCC Allenwood (of which FCI Allenwood Medium is a part) have been fully inoculated against COVID-19. The BOP's vaccination efforts reduce Mr. Turner's chance of contracting COVID-19. In addition, at only 28 years old, Mr. Turner is statistically unlikely to die if he contracts COVID-19. Indeed, between the beginning of January

2020 and March 31, 2021, of 533,291 deaths caused by COVID-19 in the United States, only 1,957 had occurred in people aged 18-29 years. By way of contrast, people aged 30 and older accounted for 531,088 of COVID-19 deaths. That is, more than 99% of the deaths occurred in people 30 and older. *See* https://www.statista.com/statistics/1191568/reported-deaths-from-covid-by-age-us/ (last visited Apr. 9, 2021). In sum the Court is aware of the risk that Mr. Turner faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

Weighing in Mr. Turner's favor under the § 3553 analysis, he has completed many classes and programs while incarcerated, including drug abuse education. *See, e.g.*, dkt. 333-1 at 2; dkt. 346 at 23. His prior criminal history is relatively minor, with only one prior adult felony conviction. Dkt. 143 at 9–10. Moreover, he has a history of substance abuse that may have contributed to his criminal convictions. *Id.* at 12. Mr. Turner has submitted multiple letters of support from family and acquaintances, and he has offers of post-release employment, both of which could add stability if he were released. Dkt. 346-3. Finally, Mr. Turner has served much of the last year under harsh lockdown conditions necessitated by the COVID-19 pandemic. Dkt. 346 at 17, 22.

Weighing against him, Mr. Turner participated in three robberies, including one in which he personally committed the robbery and threatened the pharmacist. Such crimes are extremely serious and warrant a serious sanction. To date, Mr. Turner has served less than 4 years and is not set to be released for approximately 2 years. Mr. Turner has also accrued three disciplinary infractions during his time in the BOP, including a write-up in October 2019 for using drugs and alcohol. Dkt. 349-4. In addition, medical records from 2018 show that Mr. Turner smoked some K2 that he bought from another inmate. Dkt. 349-3. He also has a history of probation violations. Dkt. 143 at 10. Taken together, these facts suggest that Mr. Turner might have difficulty complying with any conditions of supervised release this Court could set.

9

Finally, the BOP has assigned Mr. Turner a medium security classification and considers him to present a medium risk of recidivism. Dkt. 364-4. On this point, defendants who commit violent felonies are more likely to recidivate than those who commit non-violent felonies, and defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Violent offenders recidivated at a higher rate than non-violent offenders in every age group at the time of release from prison, and the gap between the two groups widens as age at release increases . . . . Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders.").[2] Defendants who are released between ages 26 and 30 have a 70.1% rate of rearrest. *Id.*

In light of the above, the Court finds that releasing Mr. Turner early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes. Certainly, the Court is sympathetic to the risks that prisoners with underlying conditions such as Mr. Turner face from COVID-19, but it cannot find that the magnitude of the risk facing Mr. Turner warrants releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors

---

[2]This report is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (last visited Apr. 9, 2021).

outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III. Conclusion

For the reasons stated above, Mr. Turner's motions for compassionate release, dkts. [331] and [346], are **denied**.

**IT IS SO ORDERED.**

Date: 4/15/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel